

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KELLY HUGHES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:05-CV-0061-M |
| | § | |
| TEXAS KEG STEAKHOUSE & BAR, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion for Summary Judgment, dated December 2, 2005. The Court **DENIES** the Motion.

FACTUAL BACKGROUND

Texas Keg Steakhouse and Bar ("the Keg") is a restaurant chain with various locations in the Dallas/Fort Worth Metroplex, including one in Plano, Texas. On March 31, 2003, the Keg hired Plaintiff Kelly Hughes as a server at the Plano location. Hughes was nineteen years old and worked part-time at the Keg while she attended college.

Plaintiff alleges that two employees of the Keg sexually harassed her during her employment. She claims that Paul Bentley, the Office Manager, (1) in May 2003, tried to hug Hughes and tried to talk another server into getting Hughes to "go with him"; (2) would tell Hughes every day "how good looking [she] was and how he wanted to sleep with [her]"; and (3) in August 2003, stated that he was going to close down the restaurant, take Hughes into the jazz room, and have sex with her on the tables. Hughes alleges that, after Bentley's August 2003

statement, Bentley assigned her to a "bad section" of the restaurant, had her schedule changed, and required her to work as a cocktail waitress. Plaintiff futher alleges that Burks Young, a bartender at the Keg, (1) would attempt to "hug on" her and brush her backside when she presented food orders to the kitchen; and (2) twice threw ice cubes into her shirt or placed them inside her shirt. Hughes alleges that she complained to Bentley and Young about their sexual harassment.

On September 8, 2003, the Keg's Plano management team held its normal weekly meeting, at which various operational and personnel issues were reviewed. At that meeting, the management team discussed Hughes's performance, and General Manager Paul Boyes concluded that it was in the Keg's best interests to terminate Hughes's employment.

Hughes filed her Complaint on January 7, 2005. Defendant filed its Motion for Summary Judgment on December 2, 2005.

STANDARD OF REVIEW

Summary judgment is warranted when the facts and law, as reflected in the pleadings, affidavits, and other summary judgment evidence, show that no reasonable trier of fact could find for the nonmoving party as to any material fact. *Pourgholam v. Advanced Telemktg. Corp.*, No. 3:01-CV-2764-H, 2004 U.S. Dist. LEXIS 10659, at *2-3 (N.D. Tex. June 9, 2004) (citing Fed. R. Civ. P. 56; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986)). "The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is

not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 322-25). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

The nonmovant is then required to go beyond the pleadings and designate specific facts that prove the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). That party may not rest on conclusory allegations or denials in its pleadings that are unsupported by specific facts. Fed. R. Civ. P. 56(e). The court must review all evidence in the record, giving credence to evidence favoring the nonmovant as well as "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses" and disregarding the evidence favorable to the nonmovant that the jury is not required to believe. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 152 (2000). Further, "the court must draw all justifiable inferences in favor of the nonmovant." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 338 (5th Cir. 2005).

In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists." *Lynch Props.*, 140 F.3d at 625. "If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir. 1991). However, in the absence of proof, a court will not conclude that the nonmoving party could prove the required facts. *Lynch Props.*, 140 F.3d at 625.

ANALYSIS

*1. Sexual Harassment*

In *Casiano v. AT&T Corp.*, the Fifth Circuit provided a "roadmap" for analysis of supervisor[1] sexual harassment claims. *See* 213 F.3d 278, 288 (5th Cir. 2000). First, a court determines whether the complaining employee suffered a "tangible employment action." *Id.*; *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 409 (5th Cir. 2002). If she has, the claim can be classified as a "*quid pro quo*" case; if she has not, the claim can be classified as a "hostile environment" case. *Wyatt*, 297 F.3d at 409; *but cf. Rogers v. Am. Heritage Life Ins. Co.*, 3:04-CV-0367-B, 2005 U.S. Dist. LEXIS 33849, at *11 (N.D. Tex. Apr. 28, 2005) (Boyle, J.) ("Despite the Supreme Court's statement that the *quid pro quo* and hostile environment rubrics are of 'limited utility', courts continue to use them."). In a *quid pro quo* suit, proof that a tangible employment action resulted from a supervisor's sexual harassment renders the employer vicariously liable. *Wyatt*, 297 F.3d at 409. In a hostile environment case, however, the next inquiry is whether the supervisor's actions constituted severe or pervasive sexual harassment. *Id.* If the conduct was not severe or pervasive, the employer is not vicariously liable for the supervisor's actions; if the conduct was severe and pervasive, the employer is vicariously liable unless the employer can establish both prongs of the *Ellerth/Faragher* affirmative defense. *Id.* To establish this defense, the employer must show that (1) the employer exercised reasonable care to prevent and correct promptly any sexual harassment, and (2) the complaining employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by

---

[1] Because the Court denies summary judgment based on the actions of Bentley, who is admittedly one of Hughes's supervisors, the Court does not reach the question of whether Young's alleged harassment, considered alone, could support Hughes's claim of sexual harassment against the Keg.

the employer. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

*a. Quid Pro Quo*

Hughes argues that she suffered tangible employment actions as a result of the alleged harassment, in the form of assignment to "bad tables" and cocktail waitress positions, and then her firing on September 8, 2003. The Fifth Circuit has defined a "tangible employment action" as a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 192 n.2 (5th Cir. 2001) (citing *Ellerth*, 524 U.S. at 761). Hughes's termination is clearly an adverse employment decision, but the Court concludes that the assignment of Hughes to "bad tables," which Hughes described as smaller tables in the back of the restaurant, is not an adverse employment action. Hughes presented no evidence that such placement affected her pay or benefits, or that it resulted in significantly different responsibilities. *See Webb v. Cardiothoracic Surgery Assocs., P.A.*, 139 F.3d 532, 539 (5th Cir. 1998). In contrast, Hughes provided evidence that her assignment as a cocktail waitress, rather than a waitress, significantly affected her pay. *See* Hughes Dec. at 2 ("Cocktail waitresses would make only about $30.00 to $40.00 a night while waitresses would make over $100.00 a night."). Hughes also provided evidence that Bentley twice assigned her to the cocktail waitress position. App. at 182. For the purposes of summary judgment, the Court finds that Hughes suffered tangible employment actions when (1) Bentley assigned her to the cocktail waitress position; and (2) she was fired.

Following the *Casiano* roadmap, the Court must now determine whether Hughes's response to the harassment caused either tangible employment action. 213 F.3d at 288. Hughes must demonstrate a causal nexus between her response to the sexual harassment and the claimed tangible employment actions. *See La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 482 (5th Cir. 2002).

Here, Defendant argues that "[Hughes] does not know whether Bentley was the cause of [any tangible employment action], and presents no evidence that [any such action] occurred because of her refusal to submit to Bentley's conduct". Def. Br. at 10. The Court disagrees. First, the record contains evidence to support Hughes's claim that Bentley made sexual advances to her on either August 23, 2003, or August 27, 2003.[2] Second, in his deposition, Bentley identified himself as part of the "management team",[3] and stated that on September 8, 2003, at a management meeting, the management team discussed Hughes' work performance.[4] At that meeting, Defendant claims Paul Boyles, the general manager, decided to fire Hughes.[5] Even if

---

[2] App. at 167, 175 ("What I heard [Bentley] say to me was when he looked at me, that he was going to close down the restaurant and take me in the jazz room and [have sexual relations with me] on every single table were his exact words.").

[3] In discussing the "hierarchy of the management at the Plano Keg", Bentley stated that the management team consisted of (1) Paul Boyes, general manager; (2) Bentley, operations manager; (3) Mike Henry, kitchen manager; (4) Mike Klasing, bar manager; and (5) Joe Worder, service manager. App. at 278.

[4] The management team discussed her attitude, indifference, need for "constant follow up", and an incident the Saturday before the meeting, when Hughes neglected to greet a table of potential customers, and they walked out (presumably without ordering). App. 279-82.

[5] App. at 282.

Boyles made the ultimate decision to dismiss Hughes,[6] the Court cannot conclude based on the record before it that Bentley did not influence Boyles's decision, in light of the short time between the alleged harassment and Hughes's firing, and Bentley's participation at the meeting when Boyles decided to fire Hughes.[7] *See Thomas v. Medco*, 1998 U.S. Dist. LEXIS 13158, at *29 (S.D.N.Y. Aug. 26, 1998) (Dolinger, M.J.) (finding that a "quid pro quo claim of harassment can rest on an alleged harasser's authority to influence an adverse employment decision"); *accord Rogers*, 2005 U.S. Dist. LEXIS 33849, at *13-14 (denying summary judgment when the alleged harasser was on the phone with the plaintiff on the day of her termination, and after she rebuffed him, he asked to be transferred to plaintiff's supervisor, and she was fired on that day). The Court finds a fact issue as to whether there is a causal nexus between Hughes's refusal of Bentley's alleged advances and her termination. *See Parks v. Miss. Dep't of Transp.*, 1:04CV240, 2006 U.S. Dist. LEXIS 2529, at *6 (N.D. Miss. Jan. 11, 2006).

---

[6]Bentley's deposition contains inconsistent testimony on this subject. When first discussing the management meeting on September 8, 2003, Bentley stated that "that day at the management meeting . . . [Hughes's] name came up. With the previous incidents that have [sic] occurred, *we* decided that it was time for [Hughes] to move on." App. at 279 (emphasis added). Because the Court's analysis does not depend on whether Boyles alone made the decision to terminate Hughes, this inconsistency is not critical.

[7]Defendant might bolster its argument if there was evidence that Bentley did not make any adverse comments about Hughes at the management meeting on September 8, 2003. Because it does not point to any such evidence, Defendant does not carry its burden of showing the absence of influence by Bentley over Boyles's decision to fire Hughes. At this juncture, the Court must indulge all reasonable inferences in favor of the nonmovant. *Keelan*, 407 F.3d at 338.

*b. Hostile Environment*

Because Plaintiff's sexual harassment claim survives Defendant's Motion for Summary Judgment under a *quid pro quo* analysis, the Court does not decide Plaintiff's hostile environment claim. *See Parks*, 2006 U.S. Dist. LEXIS 2529 at *6-7.

*2. Retaliation*[8]

The Court applies the modified *McDonnell Douglas* approach to claims of retaliation based on Title VII.[9] *See Richardson v. Monitronics Int'l*, 434 F.3d 327, 334 (5th Cir. 2005)

---

[8]In its brief, Defendant states that "[i]n her Complaint, Plaintiff also alleges that 'Defendant's intentional discrimination resulted in an adverse employment action against Plaintiff' and that 'Plaintiff was discharged from employment with Defendant'. Although not specifically characterized in her Complaint as a claim for unlawful retaliation, discovery in this case reveals that Plaintiff is contending she was terminated because of a complaint she made about purported harassment occurring at the restaurant." Def. Br. at 2. Although a fair reading of the Complaint does not clearly suggest a claim for retaliation, the Court will address the parties' argument regarding Plaintiff's purported retaliation claim. *See Mongo v. The Home Depot, Inc.*, 3:02-CV-2593-R, 2003 U.S. Dist. LEXIS 17557, at *2 (N.D. Tex. Sept. 25, 2003) ("Although it is unclear from the Complaint whether [the plaintiff] is actually alleging both retaliation and hostile work environment, the Court will nonetheless address those claims.").

[9]In *Richardson v. Monitronics International*, in dicta, the Fifth Circuit panel suggests that a court should only apply the modified *McDonnell Douglas* analysis to a claim of discrimination if the employee concedes that discrimination was not the sole reason for her discharge, and instead argues that discrimination was only a motivating factor in her termination. *See* 434 F.3d 327, 332-33 (5th Cir. 2005) (addressing a claim of retaliation under the FMLA); *see also Pool v. US Investigation Servs.*, 3:04-CV-2332-M, 2005 U.S. Dist. LEXIS 31928, at *5 n.1 (N.D. Tex. Dec. 6, 2005) (Lynn, J.) (addressing a claim of retaliation under Title VII); *Walker v. Norris Cylinder Co.*, 3:03-CV-1009-D, 2005 U.S. Dist. LEXIS 20465, at *11 n.5 (N.D. Tex. Sept. 9, 2005) (Fitzwater, J.); (addressing a claim of discrimination under Title VII); *Bywaters v. S. Methodist Univ.*, 3:04-CV-1195, 2006 U.S. Dist. LEXIS 4314, at *6-7 (N.D. Tex. Feb. 3, 2006) (Godbey, J.) (addressing claims of discrimination and retaliation under the ADEA). Here, Hughes does not claim that retaliation is the sole reason for her discharge; Hughes also brings a claim for sexual harassment. As a result, the Court applies the modified *McDonnell Douglas* analysis to Hughes's claim of retaliation.

(citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 310-12 (5th Cir. 2004)); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-46 (1973). Under this regime:

> The plaintiff must still demonstrate a prima facie case of discrimination; the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff; and, if the defendant meets its burden of production, "the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiffs protected characteristic (mixed-motive alternative).

*Rachid*, 376 F.3d at 312. To establish a prima facie case, Hughes must show (1) that she engaged in protected activity;[10] (2) that she was subjected to an adverse employment action; and (3) a causal link existed between the protected activity and the adverse employment action. *See Cornish v. Dallas Police Ass'n*, 3:04-CV-49-M, 2005 U.S. Dist. LEXIS 32930, at *15 (N.D. Tex. Dec. 13, 2005) (Lynn, J.) (citing *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004)).

Hughes argues that (1) she engaged in protected activity by complaining to both Bentley and Young about their sexual harassment, and (2) that she was assigned to "bad tables", occasionally assigned to the cocktail waitress position, and was fired. In its Reply, Defendant argues that Plaintiff has not demonstrated a fact issue as to whether she engaged in activity protected by Title VII. "Protected activity is defined as opposition to any practice rendered

---

[10] In her Response, Hughes states that, on the day she was fired, she composed an anonymous email to corporate headquarters. Pl. Br. at 8. However, Hughes does not argue that this email forms the basis of her claim for retaliation. Instead, Hughes states that the Keg's argument that the managers did not know of her harassment complaint "borders on sophistry since it totally ignores the undisputed testimony from [Hughes] that she complained on numerous occasions to both Paul Bentley and Burks Young about their sexual conduct." Pl. Br. at 19. As a result, the Court considers only Hughes's complaints to Bentley and Young in analyzing Hughes's claim of retaliation.

unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Ackel v. Nat'l Communc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (quotation and citation omitted). Defendant argues that a complaint to an alleged harasser to stop his conduct does not constitute protected activity, citing *Ackel* and *Wright v. Blythe-Nelson*, 3:99-CV-2522-D, 2001 U.S. Dist. LEXIS 12420, at *15 (N.D. Tex. Aug. 15, 2001) (Fitzwater, J.). In the Court's view, *Ackel* and *Wright* do not support Defendant's argument. In *Ackel*, a Fifth Circuit panel noted that (1) the plaintiff did not complain to management, and (2) although a third party complained to the alleged harasser (who was president and general manager of the plaintiff's employer), the third party did not act at the plaintiff's behest. *Ackel*, 339 F.3d at 385. In *Wright*, the court specifically held that it "does not suggest a view concerning defendants' assertion that an employee who refuses sexual advances must engage in conduct in addition to that which constitutes refusal of the alleged harasser's conduct in order to satisfy the requirement that she engaged in a protected activity". 2001 U.S. Dist. LEXIS 12420, at *15 n.10. Instead, the *Wright* court granted summary judgment based on the plaintiff's failure to show evidence of a protected activity. In contrast to *Wright* and *Ackel*, here, through a sworn affidavit, Hughes states that she complained to Bentley and Young about their harassment. Such complaints oppose purported sexual harassment. As a result, by the test propounded in *Ackel*, the Court finds that such comments constitute protected activity under Title VII. *See* 339 F.3d at 385.

Defendant argues that Plaintiff cannot prove a "causal link" between her comments to Bentley and Young and any adverse employment action. The Court disagrees. The Court cannot conclude on the record before it that Bentley did not influence Boyle's decision, in light of the

short time between the alleged harassment and Hughes's firing and Bentley's participation at the meeting when Boyles decided to fire Hughes.

Once the Plaintiff satisfies the *prima facie* case, the Defendant must show a legitimate, non-retaliatory reason for Hughes's termination. *See Rachid*, 376 F.3d at 312. Boyles, the general manager, testified that he decided to fire Hughes based on her overall poor performance during the time she had worked at the restaurant, her threat to quit if she found another job, and her "unacceptable attitude". Hughes's work performance constitutes Defendant's legitimate, non-retaliatory reason for Hughes's termination.

Once a legitimate non-retaliatory reason is shown, Plaintiff must offer sufficient evidence to establish a genuine issue of material fact to show either (1) that the defendant's reason is not true, but is instead a pretext for retaliation (pretext alternative);[11] or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is retaliation for Hughes's protected activity.[12] For the limited purposes of summary judgment, the Court finds that Hughes demonstrates a genuine issue of material fact as to whether retaliation for Hughes's protected activity was a motivating factor in the decision to terminate her. Hughes has provided evidence that at least one member of the management team, Bentley, had knowledge of her protected activity. Although the evidence may be weak, the Court cannot say as a matter of law that a jury could not find that Bentley influenced the decision to terminate

---

[11] In her Response, Hughes does not attempt to show pretext.

[12] Here, Hughes's protected activity is complaining to both Bentley and Young about their sexual conduct. Hughes, then, must prove that her firing was partially motivated by retaliation for her *complaining* about Bentley's or Young's actions, not for her *rejecting* any sexual overtures.

Hughes based on retaliatory animus toward such protected activity.[13] The Court **DENIES** Defendant's Motion for Summary Judgment as to Plaintiff's claim of retaliation.

CONCLUSION

The Court **DENIES** Defendant's Motion for Summary Judgment.

**SO ORDERED.**

March 21, 2006.

                                              BARBARA M.G. LYNN
                                              UNITED STATES DISTRICT JUDGE
                                              NORTHERN DISTRICT OF TEXAS

---

[13] In *McCarthy v. Primedia Workplace Learning, L.P.*, the court considered a retaliation claim based on Title VII. 2005 U.S. Dist. LEXIS 31869, at *13 n.2 (N.D. Tex. Dec. 6, 2005) (Lynn, J.). The court found that the plaintiff had not shown evidence that would allow the jury to find that any of the decisionmakers exhibited retaliatory animus toward the plaintiff's protected activity; therefore, the court granted summary judgment in favor of the employer. *Id.* Here, the record contains evidence that Hughes complained about Bentley's conduct, and, soon after, Bentley participated in the meeting when Boyles decided to terminate Hughes. Unlike *McCarthy*, here, a jury could properly infer retaliatory animus toward Plaintiff's purported protected activity.